**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ST. PAUL SURPLUS LINES | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:24-cv-2478 |
| | § | |
| HILCORP ENERGY COMPANY, | § | **Jury Trial Demanded** |
| | § | |
| Defendant. | § | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, St. Paul Surplus Lines Insurance Company ("St. Paul"), by and through undersigned counsel, hereby alleges as follows:

## PARTIES

1.      St. Paul is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business in Hartford, Connecticut.

2.      Hilcorp Energy Company ("Hilcorp") is a corporation organized and existing under the laws of the State of Texas and has its principal place of business in Houston, Texas.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 2201.  There is complete diversity of citizenship between St. Paul and Hilcorp.  The amount in controversy exceeds $75,000, exclusive of interest and costs.  The dispute between the parties constitutes an actual and ripe controversy.

4.      This Court has personal jurisdiction over Hilcorp because it has its principal place of business within the judicial district and because it conducts and transacts business in the district.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Hilcorp resides in the district and is subject to personal jurisdiction in the district, and a substantial part of the events giving rise to the claims occurred in this district.

## NATURE OF THE ACTION

6.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 for the purposes of determining questions of actual controversy between St. Paul and Hilcorp, and construing their respective rights and legal obligations arising from certain contracts of liability insurance that St. Paul issued to Hilcorp (the "Policies").

7.      Hilcorp has demanded that St. Paul provide it with defense and/or indemnity under one or more of the Policies with respect to claims asserted against Hilcorp in an underlying lawsuit served on Hilcorp on or about May 4, 2016, styled *Cameron Parish v. Auster Oil and Gas, Inc., et al.*, Case No. 10-19582 in the 38th Judicial District, Cameron Parish, Louisiana (the "*Cameron Parish* Lawsuit").  The lawsuit alleged that the defendants' oil and gas exploration, production, and transportation operations associated with the development of the East Hackberry and West Hackberry Oil & Gas Field in Cameron Parish, Louisiana, violated Louisiana environmental law and caused substantial damage to land and water bodies located within Cameron Parish.

8.      St. Paul disputes that it has any obligation to defend or indemnify Hilcorp as to the *Cameron Parish* Lawsuit under the Policies it issued to Hilcorp.

## FACTS

## The Insurance Policies

9.      St. Paul issued the following Commercial General Liability Policies to Hilcorp (the "GL Policies"):

|    | Policy Number | Policy Period |
|----|---------------|---------------|
| 1. | MU05530154 | 8/1/99-8/1/01 |
| 2. | MU05531535 | 8/1/01-8/1/02 |

2

| 3. | MU05532494 | 8/1/02-9/1/03 |

10.     St. Paul issued the following Umbrella Excess Liability Policies to Hilcorp (the "Umbrella Policies"):

| | **Policy Number** | **Policy Period** |
|---|---|---|
| 4. | MU05570114 | 8/1/99-8/1/01 |
| 5. | MU05571045 | 8/1/01-8/1/02 |
| 6. | MU05571595 | 8/1/02-9/1/03 |
| 7. | MU05575217 | 3/1/07-3/1/08 |
| 8. | MU05576329 | 3/1/08-3/1/09 |

11.     The GL Policies and the Umbrella Policies together comprise the "Policies."

12.     Because the Policies are voluminous, it would be impractical to attach a copy of each Policy hereto.  To the extent not already in Hilcorp's possession, St. Paul will produce copies of the Policies it issued to Hilcorp, once discovery has commenced, and to the Court, should the Court want them.   In addition, recitations of policy language in this Complaint are for the convenience of the Court and parties and are not intended to alter the individual contracts between St. Paul and Hilcorp.

13.     In relevant part, the GL Policies and Umbrella Policies Nos. 4-6 each include the following or substantively similar insuring agreements:

> **What This Agreement Covers**
>
> **Bodily injury and property damage liability.**
>
> We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that:
>
> • happens while this agreement is in effect; and
>
> • is caused by an event.
>
> * * *
>
> *Event* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

14.     In relevant part, Umbrella Policies Nos. 7 and 8 each include the following insuring agreements:

### What This Agreement Covers

**Coverage A: Excess Liability**

We will pay amounts any "protected person" is legally required to pay as damages that:

- are covered by Coverage A of this Agreement; and

- would have been covered by your "Basic Insurance", but aren't only because they exceed the payment of the applicable limit of coverage stated in your "Basic Insurance".

\* \* \*

The terms, definitions, conditions, limitations, and exclusions that apply to your "Basic Insurance" apply to Coverage A, subject to the policy period of this policy, and all other terms, definitions, conditions, limitations, and exclusions in this agreement that apply to Coverage A. . . .

\* \* \*

**Coverage B: Umbrella Liability**

\* \* \*

**Bodily injury and property damage liability.**

We will pay amounts any "protected person" is legally required to pay as damages for covered "bodily injury" or "property damage" that:

- happens while this agreement is in effect; and

- is caused by an "occurrence."

\* \* \*

"Occurrence" means any accident, including continuous or repeated exposure to substantially the same general harmful conditions.

4

15.     The GL Policies and the Umbrella Policies Nos. 4-6 each contain the following

conditions, quoted in relevant part:

### WHAT TO DO IF YOU HAVE A LOSS

You or other protected persons are required to perform the duties
described below when a property loss that may be covered under
this policy happens or an accident or incident happens that could
result in liability damages covered under this policy.  Failure to
comply could affect coverage. . . .

* * *

### When This Policy Provides Liability Protection

If an accident or incident happens that may involve liability
protection provided in this policy, you or any other protected person
involved must:

* * *

3.  Send us a copy of all written demands.  Also send us a copy of
all legal documents if someone starts a lawsuit.

* * *

5.  Not assume any financial obligation or pay out any money
without our consent.  But this rule doesn't apply to first aid given to
others at the time of an accident.

* * *

16.     The Umbrella Policies Nos. 7 and 8 each contain the following conditions, quoted

in relevant part:

### WHAT TO DO IF YOU HAVE A LOSS – LIABILITY

You or any other protected person are required to perform the duties
described below when an occurrence, event, accident, offense,
incident, act, error, or omission happens or is committed that will
likely result in damages that are covered by this policy. Failure to
comply could affect coverage. . . .

* * *

You or any other protected person involved must perform the following duties if:

- an occurrence, event, accident, offense, incident, act, error, or omission happens or is committed that will likely result in damages that are covered by this policy;

\* \* \*

2.  Send us a copy of all written demands.  Also send us a copy of all legal documents if any person or organization starts a lawsuit.

\* \* \*

5.  Not assume any financial obligation or pay out any money without our consent.

\* \* \*

### The *Cameron Parish* Lawsuit

17.     The *Cameron Parish* Lawsuit alleges that the defendants, including Hilcorp, in the course of its oil and gas exploration, production, and transportation operations, violated Louisiana's Coastal Zone Management Laws (the "CZM Laws") and damaged the land and water bodies within Cameron Parish's "Coastal Zone."

18.     The *Cameron Parish* Lawsuit alleges that the complained of operations occurred within a specified "Operational Area" in the Coastal Zone.

19.     Hilcorp allegedly drilled and/or operated 114 oil and gas wells within the Operational Area.

20.     The defendants', including Hilcorp's, oil and gas operations in the Operational Area allegedly included dredging canals in excess of that permitted by coastal use permits, or without obtaining coastal use permits.

21.     The canals dredged by the defendants, including Hilcorp, allegedly were not designed, constructed, or maintained to prevent bank slumping, erosion, and saltwater intrusion

and to minimize inland movement of storm surges, and the canals therefore allegedly caused degradation of the Operational Area, including erosion of marshes and associated aquatic and terrestrial life, increased risk of damage from storm surges, and accelerated saltwater intrusion.

22.     The operations and activities of the defendants in the *Cameron Parish* Lawsuit within the Operational Area allegedly resulted in the release of contaminants, pollutants, waste, leachate, and toxic substances into the environment and away from the operated facilities.

23.     The defendants' drilling and production sites and waste facilities within the Operational Area allegedly were not built to withstand all expectable adverse conditions without releasing pollutants, were not designed to prevent the release of pollutants or toxic substances, and were not designed and constructed to prevent leaching, control leachate production, or prevent the movement of leachate away from the facility.

24.     The *Cameron Parish* Lawsuit alleges that defendants' oil and gas operations in the Operational Area included the construction and use of unlined earthen pits, which have never been closed in conformance with the CZM Laws or other applicable Louisiana laws.

25.     Defendants allegedly failed to design and construct waste pits in the Operational Area to prevent leaching and to prevent the movement of leachate away from the waste facilities.

26.     Defendants allegedly discharged and disposed of oil field wastes, including oil field brines, into the Operational Area.

27.     As a result of these deficiencies, the *Cameron Parish* Lawsuit alleges that the defendants' oil and gas operations and activities caused the canals, bayous, sediments, marshes, soils, and groundwater in the Operational Area to become contaminated and/or polluted in excess of applicable Louisiana standards.

28.     The *Cameron Parish* Lawsuit also alleges that the defendants' oil and gas operations and activities resulted in disposal of radioactive material—including radium 226, radium 228, and naturally occurring radioactive materials—in the Operational Area.

29.     Following those oil and gas operations and activities, the defendants allegedly failed to clear, revegetate, detoxify, or otherwise restore the areas in the Coastal Zone.

### Hilcorp Did Not Notify St. Paul of the *Cameron Parish* Lawsuit Until Eight Years After Being Served and Five Months After Settling

30.     The *Cameron Parish* Lawsuit was filed on or about February 4, 2016.

31.     Hilcorp was served with the *Cameron Parish* Lawsuit on or about May 4, 2016.  A copy of the complaint in the *Cameron Parish* Lawsuit as served upon Hilcorp is attached as Exhibit A.

32.     On information and belief, and according to public reporting and the docket in the *Cameron Parish* Lawsuit, Hilcorp entered into a settlement in connection with the *Cameron Parish* Lawsuit on or about December 2023.

33.     On information and belief, Hilcorp assumed certain obligations, including financial obligations, when settling the *Cameron Parish* Lawsuit, and has made or will make payments in accordance with that settlement.

34.     On April 30, 2024, Aon Risk Services ("Aon") notified JH Blades of the *Cameron Parish* Lawsuit under the GL Policies and Umbrella Policies Nos. 4-6.

35.     On May 10, 2024—more than 8 years after Hilcorp was first served with the Petition—JH Blades notified St. Paul of the *Cameron Parish* Lawsuit.

36.     Prior to May 10, 2024, St. Paul did not receive any communications from Hilcorp about the *Cameron Parish* Lawsuit.

37.     Hilcorp's failure to notify Travelers of the *Cameron Parish* Lawsuit until after Hilcorp settled the lawsuit in December 2023 violated the conditions of the Policies and, *inter alia*, deprived St. Paul of the opportunity to participate in Hilcorp's defense, including Hilcorp's ultimate settlement of the case.

38.     St. Paul did not consent to Hilcorp's settlement of the *Cameron Parish* Lawsuit or to Hilcorp's assumption of any obligations, including any financial obligations, as part of that settlement.

39.     Aon's April 30, 2024 tender correspondence to JH Blades on behalf of Hilcorp asserts that, "[w]hile the Petition was served several years ago, the noted policies have just been identified."

40.     Contrary to Aon's statement that the policies were "just . . . identified" when Hilcorp tendered the *Cameron Parish* Lawsuit, between 2015 and 2021, Aon on behalf of Hilcorp and/or Hilcorp tendered eleven different unrelated claims to St. Paul under the exact same policies.

41.     Hilcorp's and Aon's tender of other claims to St. Paul since 2015, in conjunction with other communications between Hilcorp and St. Paul, demonstrate that Hilcorp was aware of the Policies, of their terms, and of their alleged potential relevance long before Hilcorp gave St. Paul notice of the *Cameron Parish* Lawsuit.

## COUNT I
## <u>DECLARATION OF NO COVERAGE – LATE NOTICE</u>

42.     St. Paul reasserts and incorporates by reference Paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43.     Hilcorp was served with the Petition in the *Cameron Parish* Lawsuit on or about May 4, 2016.

44.     Hilcorp did not provide St. Paul notice of or forward the Petition or any other legal documents from the *Cameron Parish* Lawsuit to St. Paul until May 10, 2024.

45.     Hilcorp's failure to provide St. Paul notice of the *Cameron Parish* Lawsuit for more than eight years violated the conditions of the Policies and, *inter alia*, deprived St. Paul of the opportunity to participate in Hilcorp's defense, including its ultimate settlement of the suit.

46.     Hilcorp's failure to provide St. Paul any notice of the *Cameron Parish* Lawsuit until months after settlement prejudiced St. Paul.

47.     Accordingly, coverage is not available to Hilcorp in connection with the *Cameron Parish* Lawsuit under the Policies because Hilcorp breached the "What To Do If You Have a Loss" Condition.

## COUNT II
## <u>DECLARATION OF NO COVERAGE – VOLUNTARY PAYMENT</u>

48.     St. Paul reasserts and incorporates by reference Paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49.     Hilcorp has not provided any written demands made upon it in relation to the *Cameron Parish* Lawsuit to St. Paul.

50.     On information and belief, and according to public reporting and the docket in the *Cameron Parish* Lawsuit, Hilcorp settled the *Cameron Parish* Lawsuit on or about December 2023.

51.     On information and belief, Hilcorp assumed certain obligations, including financial obligations, in its settlement of the *Cameron Parish* Lawsuit.

52.     Hilcorp did not obtain St. Paul's consent before assuming any obligations, including any financial obligations, in its settlement of the *Cameron Parish* Lawsuit.

53.     Hilcorp did not obtain St. Paul's consent before paying out or committing to pay out any money pursuant to its settlement of the *Cameron Parish* Lawsuit.

54.     Hilcorp's assumption of financial obligations and payment, or commitment to pay, money without St. Paul's consent prejudiced St. Paul.

55.     Accordingly, coverage is not available to Hilcorp in connection with its settlement of the *Cameron Parish* Lawsuit under the Policies because Hilcorp breached the "What To Do If You Have a Loss" Condition.

**COUNT III**
**DECLARATION OF NO OR LIMITED COVERAGE – ADDITIONAL PROVISIONS**

56.     St. Paul reasserts and incorporates by reference Paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57.     While there is no coverage available to Hilcorp under the Policies for the *Cameron Parish* Lawsuit for the reasons set forth in Counts I and II herein, additionally, and in the alternative, St. Paul is under no obligation to defend and/or indemnify Hilcorp in connection with the *Cameron Parish* Lawsuit pursuant to the terms, conditions, provisions, and exclusions of the Policies as follows:

a.     Any claims against St. Paul are barred to the extent any applicable statute of limitations has lapsed.

b.     Coverage under the Policies is barred to the extent Hilcorp has failed to perform all conditions and obligations under those Policies.

c.     Coverage under the Policies is barred by the terms, conditions, exclusions and limitations contained in the Policies.

d.      Coverage under the Policies is barred to the extent the *Cameron Parish* Lawsuit does not involve or otherwise constitute "bodily injury," "property damage," or "personal or advertising injury," as defined in the Policies.

e.      Coverage under the Policies is barred to the extent the *Cameron Parish* Lawsuit does not involve injury or damage caused by an "event," "occurrence," "offense," "incident," or "accident," as defined in the Policies.

f.      To the extent the *Cameron Parish* Lawsuit involves damages that allegedly resulted from Hilcorp's violation of the CZM Laws, including its violation of coastal use permits and its unpermitted uses of the Coastal Zone, coverage is not available under the Policies because such violations do not constitute an "event" or an "occurrence," as defined in the Policies.

g.      Coverage under the Policies is barred to the extent Hilcorp expected or intended any injury or damage at issue in the *Cameron Parish* Lawsuit.

h.      The Policies do not cover ordinary business expenses that Hilcorp has incurred as part of its ongoing business operations.

i.      The Policies do not afford coverage for any amounts sought or recovered from Hilcorp that are not damages on account of "property damage" sustained by a third-party during any applicable policy period.

j.      Coverage under the Policies is barred to the extent the *Cameron Parish* Lawsuit did not seek, and to the extent that any settlement thereof does not involve, relief in the form of "damages" or "pollution clean-up costs" within the meaning of the Policies, including costs of opposing or complying with statutes, administrative regulations, fines, penalties, sanctions, punitive damages or injunctive, declaratory or equitable relief, or any sums paid to

prevent future injury, that are not the payment of compensatory damages, none of which is covered by the Policies.

   k.  Coverage under the Policies is barred to the extent the *Cameron Parish* Lawsuit involves or otherwise constitutes "previously known physical damage to tangible property of others," as defined in the Policies, or known losses, pre-existing conditions, losses-in-progress, and/or losses that are otherwise non-contingent and non-fortuitous.

   l.  The Policies provide that St. Paul has the right and duty to defend any protected person against a claim or suit for injury or damage covered by the Policies.  St. Paul has been deprived of its right under the Policies to defend the *Cameron Parish* Lawsuit.  Additionally, St. Paul can have no duty to defend Hilcorp under the Policies with respect to the *Cameron Parish* Lawsuit because, as of the date of first notice and tender to St. Paul, and following Hilcorp's settlement, there is no claim or suit for St. Paul to defend.

   m.  The Policies do not afford coverage for "your pollution clean-up costs" because the *Cameron Parish* Lawsuit does not allege a "sudden" and "accidental" "pollution" incident, and even if the *Cameron Parish* Lawsuit did so allege, Hilcorp did not report any "sudden" and "accidental" "pollution" incident to St. Paul within 90 days after the incident first became known to Hilcorp, as required by the Policies.

   n.  Coverage under the Policies is barred to the extent the *Cameron Parish* Lawsuit involves or otherwise constitutes injury or damage that result from "pollution" at, on, in, or from any "protected person's premises," "waste site," or "protected person's work site," or from any "waste pollutant," as precluded by the Pollution exclusions in the Policies.

   o.  Coverage under the Policies is barred to the extent the *Cameron Parish* Lawsuit involves or otherwise constitutes any loss, cost, or expense that results from any request,

demand, or order that any protected person or others perform testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing any "pollutant," as precluded by the Pollution Work Loss, Cost, or Expense exclusions in the Policies.

    p. Coverage under the Policies is barred to the extent the *Cameron Parish* Lawsuit involves or otherwise constitutes injury, damage, or "pollution clean-up costs" precluded by the Lead exclusions, or that result from the actual, alleged, or threatened exposure of any property to, or the "hazardous properties" of, any "nuclear material," as precluded by the Nuclear Materials exclusions in the Policies.

    q. Coverage under the Policies is barred by the Control of Property exclusions in the Policies.

    r. Coverage under the Policies is barred for any damages resulting from the ownership, maintenance, use, operation, loading, unloading, or entrustment to others of any watercraft Hilcorp owned, operated, rented, leased, or borrowed pursuant to the Watercraft exclusion in the Policies.

    s. Coverage under the Policies is barred to the extent the full limits of all underlying insurance policies and/or self-insured retentions have not been properly exhausted.

    t. Coverage under the Policies is barred to the extent Hilcorp had notice of any occurrence, event, accident, offense, incident, act, error, or omission asserted in the *Cameron Parish* Lawsuit, and failed to timely give notice to or cooperate with St. Paul in accordance with the Policies.

    u. Coverage under the Policies is barred for any bodily injury or property damage asserted in the *Cameron* Parish Lawsuit that occurred prior to and/or subsequent to the dates of the Policies.  Hilcorp is not entitled to defense or indemnity incurred in connection with

14

or resulting from events, occurrences, injuries, and/or damages that took place during periods in which Hilcorp was uninsured, self-insured, or not insured by St. Paul, or in which there is no applicable insurance coverage or such coverage has been exhausted or is otherwise unrecoverable.

        v.     Coverage under the Policies is barred to the extent the *Cameron Parish* Lawsuit arises out of the liability of others that has been assumed by contract or agreement other than as specified in the Policies.

        w.     Coverage under the Policies is barred to the extent coverage is sought for liabilities arising out of the acts or omissions of any individual or organization other than those individuals or organizations declared or described as a named insured, insured, or protected person in the Policies.

        x.     The Policies include or incorporate business risk exclusions.  Coverage under the Policies is barred to the extent the *Cameron Parish* Lawsuit involves injury, damage, liability or loss that falls within the scope of any of these exclusions.

        y.     Coverage under the Policies is barred to the extent Hilcorp failed to mitigate, minimize, or avoid any alleged injury or damage.

        z.     To the extent Hilcorp and/or its predecessors, affiliates, agents, brokers or other representatives intentionally or unintentionally failed to disclose, or concealed, omitted or misrepresented facts material to the risks at issue in this litigation, any claims for coverage are barred.

        aa.     Any duty of St. Paul to defend or indemnify with respect to any claim or action is subject to any self-insured retention, retained limit, deductible, underlying limits and the applicable limits of liability contained in such Policies, and St. Paul reserves the right to require that all such amounts be satisfied and exhausted.

bb.     St. Paul's liability, if any, under the Policies shall not exceed the limits as stated in the Policies regardless of the number of: (i) protected persons; (ii) claims made or suits brought; or (iii) persons or organizations making claims or bringing suits.

cc.     Coverage under the Policies is barred to the extent Hilcorp has failed to enforce any right of contribution or indemnity against any person or organization that may be liable to it because of injury or damage to which the Policies may also apply and to the extent it has failed to cooperate with St. Paul in enforcement of such right.  Coverage under the Policies is barred to the extent Hilcorp has impaired St. Paul's right to recover all or part of any payment made under the Policies from any other person against which it has any rights to recover.

58.     Upon information and belief, Hilcorp disputes the applicability of the various contract provisions and defenses set forth in paragraphs (a) through (cc) of Paragraph 57.

59.     Accordingly, St. Paul is unable to know or judge its obligations, if any, to Hilcorp in connection with the *Cameron Parish* lawsuit.  St. Paul therefore is entitled to have a declaration of its rights and a judicial interpretation of the rights and obligations of the parties under the Policies.

WHEREFORE, St. Paul respectfully prays as follows:

(A)     That this Court enter a declaratory judgment that, under the Policies, St. Paul is under no obligation to provide defense and/or indemnification to Hilcorp, or to pay any expenses it incurs in connection with the *Cameron Parish* Lawsuit;

(B)     In the alternative, that this Court enter a judgment declaring the extent of St. Paul's duties (if any) to Hilcorp in connection with the *Cameron Parish* Lawsuit;

(C)     That this Court enter a judgment awarding St. Paul the attorneys' fees, costs, and expenses incurred in this action; and

That this Court enter a judgment awarding St. Paul such other relief as the Court deems just and proper.

## JURY DEMAND

St. Paul hereby demands a trial by jury.

Dated: July 1, 2024

Respectfully Submitted,

DENTONS US LLP

By: */s/ Mukul S. Kelkar*
Mukul S. Kelkar (Federal Bar No. 1503770)
1300 Post Oak Blvd., Suite 650
Houston, Texas 77056
Tel:  (713) 658-4600
Fax:  (713) 739-0834
mukul.kelkar@dentons.com

and

Donna J. Vobornik (*pro hac vice* to be filed)
Joel M. Graczyk (*pro hac vice* to be filed)
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606-6361
Tel:  (312) 876 8000
Fax:  (312) 876-7934
donna.vobornik@dentons.com
joel.graczyk@dentons.com

*Counsel for Plaintiff St. Paul Surplus Lines Insurance Company*